UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE RODRIGUEZ, VALENTIN RODRIGUEZ, ALEJANDRO MONDRAGON and RUBEN PEREZ, Individually and on Behalf of All Others Similarly Situated<br>*Plaintiffs*<br><br>v.<br><br>MECHANICAL TECHNICAL SERVICES, INC.; COMFORT SYSTEMS USA, INC.; CLP RESOURCES, INC., and LABOR READY, CENTRAL, INC.<br>*Defendants* | § § § § § § § § § § § § § § § | Civil Action No. 1:12-cv-00710-LY<br><br><br><br>Jury Demanded |

**PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER, CORRECTIVE NOTICE, SANCTIONS, AND PRELIMINARY INJUNCTION**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs file this Emergency Motion for Protective Order, Corrective Notice, Sanctions, and Preliminary Injunction, and in support thereof respectfully show:

**I.    Introduction**

Defendant Mechanical Technical Systems, Inc. ("Mtech") currently is conducting a campaign to dissuade its employees who are potential class members from opting into this FLSA collective action and coercing them into signing false statements against their interest denying that they ever worked "off the clock" and were not paid for overtime hours. When one of Mtech's employees, Ernesto Perez, refused to sign the statement, he was promptly fired. In order to cure the effect of Mtech's attempt to defeat this Court's role in supervising a fair notice process, Plaintiffs seek 1) a protective order enjoining Defendants from communicating further with the potential class members about this lawsuit; 2) an order that Mtech issue a corrective

notice to the potential class members; 3) monetary and nonmonetary sanctions, including striking any declarations Mtech has obtained from its employees to date in this matter and allowing additional notice after adjudication or settlement; and 4) a preliminary injunction ordering that Ernesto Perez be reinstated to his previous position of employment.

## II.     Background

Plaintiffs filed this action on August 6, 2012 as collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C.§ 216(b).  Each of the Defendants filed its Answer on September 4, 2012.  From September 5 until October 12, 2012, Plaintiffs' counsel conferred with Mtech's counsel to try to reach an agreement on an agreed order for notice to the potential class members.  The parties were unable to reach an agreement, and on October 10, 2012, Plaintiff's counsel advised Mtech's counsel that Plaintiffs would file a motion for notice to the class. Plaintiffs filed their Motion for Certification as a FLSA Collective Action and for Notice to the Class on October 26, 2012 (Doc. # 12.)

Throughout the week of October 15-22, 2012, Mtech ordered many of its employees, one-by-one, to leave their assigned construction job sites during the workday and report to Mtech's main office.  *Sworn Declaration of Ernesto Perez* at ¶ 3, attached hereto and incorporated herein by reference as Exhibit "A."  One employee, Mike Arasano, asked why he was being summoned to Mtech's office, and Mtech manager Paul Zambrano responded that it was to speak with management and Mtech's lawyers because Mtech was "getting sued big time." *Id.*  Zambrano looked at then Mtech employee Ernesto Perez while he said this, as if to indicate Perez knew about or had some connection to the lawsuit.  *Id.*  Zambrano knew that Perez is the brother-in-law of Lead Plaintiffs Jose and Valentin Rodriguez.  *Id.*

When each employee reported alone to Mtech's office, he was met by Mtech managers or

officers, including Ed Neal, and Mtech's attorneys. *Id.* The employees were interrogated about the facts giving rise to this lawsuit and told to sign some papers. *Id.* Mtech employees were told that Mtech was being sued for wage violations; that Mtech will have to pay a lot of money to resolve the lawsuit; and that if more workers join the lawsuit it likely will ruin Mtech's business and put everyone out of work. *Id.* at ¶ 4.

On October 23, 2012, Ernesto Perez was instructed by his foreman, Miguel, that Mtech's management wanted him to report to the main office to assign him to a new construction project. *Id.* at ¶ 5. When Perez arrived, he was met by Mtech managers Ed Neal and Paul Zambrano. *Id.* Neal and Zambrano asked Perez to sign a statement denying that he ever worked off-the-clock or worked overtime without being paid. *Id.* Perez responded that he could not sign the statement in good conscience because it was not true and that he regularly worked off-the-clock overtime hours without being paid. *Id.* Immediately after Perez refused to sign the document, Ed Neal put the statement away and told Perez that he was terminated. *Id.* Perez asked whether he was being laid off or terminated, and Ed Neal responded that he was terminated. *Id.*

Perez clearly understood that he was terminated because he refused to sign the false statement. *Id.* at ¶ 7. For the last several years Perez was considered a "lead" worker, which means he was among the most experienced workers on any given crew and assisted the foremen in monitoring and guiding the rest of the crew. *Id.* at ¶ 6. Perez always had received positive performance evaluations, and never was laid off or terminated before during Mtech's periods of mass layoffs. *Id.*

### III. Authority and Argument

    **A. Court's Role**

        1. <u>This Court has the authority and duty to ensure a fair notice process, including limiting contact with potential class members.</u>

A collective action under 29 U.S.C.§ 216(b) (FLSA), like a class action, prevents piecemeal litigation, inconsistent adjudications, and difficult res judicata issues. *Donovan v. University of Texas*, 643 F.2d 1201, 1206-07 (5th Cir. 1981). "However, unlike a class action, absent class members will not participate in the recovery (or be bound by the judgment) unless they specifically opt into the class upon receiving notice of the pending action." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 665 (E.D. Tex. 2003).

As in *Rule 23* class actions, courts in *§ 216(b)* collective actions have the authority to govern the conduct of counsel and parties. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). "Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, 'a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Belt*, 299 F. Supp. 2d at 667 (citing *Gulf Oil Company v. Bernard*, 452 U.S. 89, 100, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981)).

"In the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)). As commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for *First Amendment* Concerns. *Belt*, 299 F. Supp. 2d at 668 (citing *Kleiner*, 751 F.2d at 1203; *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994)). Courts "have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine *Rule 23* by encouraging class members not to join the suit." *Belt*, 299 F. Supp. 2d at 667-68 (citing *Kleiner*, 751 F.2d at 1206;

*Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 244-45 (E.D. Tex. 1997); *Hampton Hardware*, 156 F.R.D. at 632-33.

> 2. The employer-employee relationship is inherently conducive to coercion and is sufficient grounds for limiting speech.

The Supreme Court has noted the heightened potential for abuse in the employer-employee context. In so doing, the Supreme Court cautioned that any evaluation of communications in the employer-employee context "must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." *NLRB v. Gissel Packing Co.*, 23 L.Ed.2d 547, 617-18 (1969).

With regard to the specific context of ex parte communications by a defendant with its employees regarding a pending FLSA collective action, a Western District of Texas Court recently noted:

> Additionaly, "when a given form of speech is inherently conducive to overreaching and duress," a showing of a particular existing harm is not required; a likelihood of serious abuse is sufficient. *Kleiner*, 751 F.2d at 1206; *Hampton Hardware*, 156 F.R.D. at 633. Speech between parties with an ongoing business relationship is inherently conducive to coercive influence, *Hampton Hardware*, 156 F.R.D. at 633, and an employer-employee relationship is a salient example of this type of ongoing business relationship. *Recinos-Recinos v. Express Forestry, Inc.*, No. Civ.A. 05-1355, 2006 U.S. Dist. LEXIS 2510, 2006 WL 197030, at *12 (E.D. La. Jan. 24, 2006); *Burrell*, 176 F.R.D. at 244.

*Castillo v. Hernandez*, 2011 U.S. Dist. LEXIS 42632, *9-10 (W.D. Tex. Apr. 20, 2011); *see also EEOC v. Morgan Stanley & Co., Inc.*, 206 F.Supp.2d 559, 562-3 (S.D.N.Y. 2002) (finding "the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding communication between defendants and potential class members"); *Abdallah v. Coca-Cola Company*, 186 F.R.D. 672, 678 (N.D.Ga.1999) (noting that, even though

Coca-Cola had not given the court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation, simple reality suggests that the danger of coercion is real and justifies imposition of limitations on Coca-Cola's communications with potential class members, regardless of whether communications occur before or after class certification). As the *Recinos-Recinos* Court noted:

> Clearly, the aim and effect of such in-person communication is to provide a one-sided presentation and to encourage speedy and perhaps uninformed decision-making, providing no opportunity for intervention or counter-education. . . . It is difficult to conceive of any advice from [defendant] regarding the lawsuit that is not rife with the potential for confusion and abuse given defendant's interest in this lawsuit.

2006 U.S. Dist. LEXIS at *12.

### B. Protective Order

Under the circumstances present here, courts routinely enjoin defendants from making any ex-parte communications with plaintiffs or potential class members regarding the subject matter of the litigation during the pendency of the litigation. *E.g.*, *Belt*, 299 F. Supp. 2d at 669; *Castillo*, 2011 U.S. Dist. LEXIS 42632 at *15; *Recinos-Recinos*, 2006 U.S. Dist. LEXIS at *12; *Hampton Hardware*, 156 F.R.D. at 633-34; *Rankin v. Bd. of Educ. of Wichita Pub. Schs.*, 174 F.R.D. 695, 697 (D. Kan. 1997); *Haffer*, 115 F.R.D. at 513.

### C. Corrective Notice

Under these circumstances, courts also order issuance of corrective notice to the potential class members to ameliorate any intimidation or confusion caused by the defendants' improper communications and to restore fairness and balance to the court-managed notice process. *E.g., Belt*, 299 F. Supp. 2d at 669-70; *Veliz v. Cintas Corp.*, No. C-03-1180, 2004 WL 2623909, *3 (N.D. Cal. Nov. 12, 2004); *Spoerle v. Kraft Foods Global, Inc.,* 253 F.R.D. 434, 443 (W.D. Wis. 2008); *Sjoblom* v. *Charter Communications, LLC,* 3:07-civ-0451, 2007 WL 5314916 (W.D. Wis.

Dec. 26, 2007); *Impervious Paint Industries Inc. v. Ashland Oil*, 508 F. Supp. 720, 724 (W.D. Ky. 1981).

**D.     Sanctions**

1.     Nonmonetary Sanctions

a)     *Striking Declarations*

Under these circumstances, courts also routinely strike the declarations of potential class members obtained through defendants' subversive ex-parte contacts. *E.g.*, *Longcrier* v. *HL-A Co., Inc.,* 595 F.Supp.2d 1218, 1228 (S.D. Ala. 2008) (affidavits of potential class members in FLSA collective action stricken where obtained under misleading and coercive circumstances, including employees called individually into meetings during work hours and not advised of their rights in the action); *Sjoblom*, 2007 WL 5314916 at *1-4 (striking 62 affidavits of potential class members obtained before certification in FLSA collective action, and finding corrective notice necessary if class later certified, where affidavits obtained from employees during work hours without full disclosure of rights even though disclosure advised employees of the pending action, that they had no obligation to speak with employer's attorney, and that they would not be retaliated against).

b)     *Post-Adjudication Notice*

Under these circumstances, courts also require notice to class members of their right to participate in the lawsuit after a finding of liability in order "to maintain the integrity of the action in the face of a party's coercive activity." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 757 (9th Cir. 2010); *see also Belt*, 299 F. Supp. 2d at 670 (reserving the possibility of post-verdict opt-ins); *Macarz v. Transworld Systems, Inc.*, 201 F.R.D. 54 (D. Conn. 2001) ("Class members are more likely to remain in the class if they are aware that liability has been

determined in their favor, thus preserving judicial resources and their rights."); *Catlett v. Missouri Highway and Transp. Comm'n*, 589 F. Supp. 949, 952 (W.D. Mo. 1984); *Six Mexican Workers v. Arizona Citrus Growers*, 641 F. Supp. 259, 261 (D. Ariz. 1986);.

In *In re Nissan Motor Corp. Antitrust Litig.*, the Fifth Circuit approved a notice to class members of the lead plaintiff's settlement, because withholding that information "would only needlessly squander or dissipate those energies and resources that the class representatives, defendants, and the federal court system have already committed to resolving this controversy." 552 F.2d 1088, 1105 (5th Cir. 1977).

2. Monetary Sanctions

This Court is authorized to impose monetary sanctions pursuant to its inherent power to supervise its docket and regulate bad-faith conduct of parties. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-47 (1991). At a minimum, the Court should order Mtech to bear the costs of issuing corrective notice and to pay Plaintiffs' reasonable and necessary attorneys' fees incurred in responding to and investigating Mtech's bad-faith conduct and in bringing this Motion. *See Belt*, 299 F. Supp. 2d at 670.

**E. Preliminary Injunction**

Federal Rule of Civil Procedure 65 permits the court to enter a preliminary injunction. "A preliminary injunction functions merely to preserve the status quo until the merits of a claim can be adjudicated." *Middleton-Keirn v. Stone*, 655 F.2d 609, 610 (5th Cir. 1981). Before a preliminary injunction may issue, the plaintiffs must show that (1) there is a substantial likelihood they will prevail ultimately on the merits, (2) there is a substantial danger they will suffer irreparable injury if an injunction does not issue, (3) the threatened injury outweighs any harm to the defendant resulting from the injunction, and (4) the injunction will not harm the

public interest. *Hull v. Quitman County Bd. of Educ.*, 1 F.3d 1450, 1453 (5th Cir. 1993); *Grupo Bryndis, Inc. v. Hinojosa*, 2010 U.S. Dist. LEXIS 132714 (W.D. Tex. Dec. 15, 2010).

"An injunction reinstating employees to their former position and restraining further retaliation fits squarely within the relief available under § 216(b) . . ." *Bailey v. Gulf Coast Transp. Inc.*, 280 F.3d 1333, 1336 (11th Cir. 2002). A preliminary injunction may be entered because the "antiretaliation provision was meant 'to foster a climate in which compliance with the substantive provisions of the Act would be enhanced' by protecting employees who come forward with complaints." *Id.* at 1337.

1. <u>There is a substantial likelihood that Plaintiffs will prevail on the merits.</u>

The FLSA provides that actions may be brought by any employee on behalf of himself and others similarly situated and specifically contemplates "equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including . . . reinstatement." 29 U.S.C. § 216(b); *Clincy v. Galardi South Enterprises, Inc.,* 09-CV-2082-RWS, 2009 WL 2913208, *2 (N.D. Ga. Sept. 2, 2009). Plaintiff Ernesto Perez's sworn declaration clearly establishes a strong case of retaliation. *Exhibit A*. The Court in *Clincy* found a substantial likelihood of success on the merits of a retaliation claim when plaintiffs were similarly fired for participating in a FLSA collective action. 2009 WL 2913208 at *2.

2. <u>There is a substantial danger that Plaintiffs and potential class members will suffer irreparable injury.</u>

There is a substantial likelihood that other individuals will not exercise their rights under the FLSA as a result of Mtech's retaliatory conduct toward Plaintiff Perez. Not only has Plaintiff Ernesto Perez suffered irreparable injury from his loss of employment (and will continue to suffer), but the chilling effect on potential class members also constitutes irreparable injury. *See Holt v. Continental Group, Inc.,* 708 F.2d 87,91 (2d Cir. 1983) (reversing District Court's

denial of preliminary injunction to reinstate employment and remanding to consider the risk of irreparable harm because "a retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights under the Act or from providing testimony for the plaintiff in her effort to protect her own rights"); *Garcia v. Lawn,* 805 F.2d 1400, 1405-1406 (9th Cir. 1986) (reversing District Court's denial of preliminary injunction to reinstate employment and finding irreparable harm because of "deleterious effect on the exercise of these rights by others"); *Clincy*, 2009 WL 2913208 at *2 (finding retaliatory discharge of FLSA opt-in plaintiffs was irreparable injury); *Bowman v. New Vision Telecom., Inc.,* 09-1115, 2009 WL 5031315 (M.D. Tenn. Dec. 14,2009) (finding retaliatory discharge of FLSA opt-in plaintiffs was irreparable injury).

3. <u>The threatened injury outweighs any harm to the Defendants.</u>

Defendant Mtech happily employed Ernesto Perez for nearly eight years until the moment he refused to sign a false statement to oppose this lawsuit. *Exhibit A*. Even if Mtech could demonstrate any arguable, legitimate harm from reinstating Perez, the harm would be outweighed by the detriment his retaliatory discharge caused to this Court's management of this lawsuit and the potential class members' right to participate. *See Bowman*, 2009 WL 5031315 at 13 ("Balancing the substantial harm to the Plaintiffs against the substantial harm to Defendants and others, the Court concludes that this factor weighs in favor of Plaintiffs.")

4. <u>The injunction will not harm, but rather will serve the public interest.</u>

The Court in *Bowman* explained:

Congress enacted the retaliation provision of the FLSA to protect workers from the type of conduct at issue in this motion. Thus, there is a strong public policy interest in permitting employees to challenge pay practices in federal court without fear of reprisal. Issuance of an injunction will not have any appreciable negative impact on the public interest, but rather, will have the effect of enforcing

a federal law that was passed to protect employees.

*Id.*

## IV. <u>Conclusion</u>

Despite this Court's duty and authority to supervise a fair notice process in order to serve the broad remedial goals of the FLSA, Mtech has blatantly and aggressively coerced the potential class members through misleading statements, threats, and illegal retaliation. Accordingly, a protective order, prohibiting further contact or communications by Mtech with the potential class members regarding this lawsuit without prior court approval must be issued. Further, remedial steps should be taken to counteract the devastating impact on this Court's task of informing the potential class members of their rights.

Respectfully submitted,

By: _____
Aaron Johnson
Texas State Bar No. 24056961
aaron@equaljusticecenter.org
Chris Willett
Texas State Bar No. 24061895
chris@equaljusticecenter.org
EQUAL JUSTICE CENTER and
TRANSNATIONAL WORKER RIGHTS CLINIC
510 S. Congress Ave., Suite 206
Austin, Texas 78704
Tel.: (512) 474-0007 ext-104
Fax: (512) 474-0008

J. Derek Braziel
Texas Bar No. 00793380
jdbraziel@l-b-law.com
Meredith Mathews
Texas Bar No. 24055180
mmathews@l-b-law.com
LEE & BRAZIEL, L.L.P.
1801 N. Lamar St. Suite 325
Dallas, Texas 75202
Tel: (214) 749-1400
Fax: (214) 749-1010
www.overtimelawyer.com

Attorneys for Plaintiffs

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Angela Marshall, counsel for Defendants Mtech and Comfort Systems USA, by telephone on October 25, 2012 regarding this motion and she indicated that Mtech and Comfort Systems oppose this motion.

_____
Aaron Johnson
Attorney for Plaintiffs

# CERTIFICATE OF SERVICE

This is to certify that on November 3, 2012, I electronically transmitted the above document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants below:

David R. Ongaro
dongaro@obllaw.com
Amelia D. Winchester
awinchester@obllaw.com
ONGARO, BURTT & LOUDERBACK
650 California Street, Fifth Floor
San Francisco, California 94108
Telephone: (415) 433-3901
Facsimile: (415) 433-3950

Danley Cornyn
danley.cornyn@tklaw.com
THOMPSON & KNIGHT, LLP
98 San Jacinto Blvd., Suite 1900
Austin, Texas 78701
Telephone: (512) 469-6100
Facsimile: (512) 469-6180

Elizabeth Schartz
elizabeth.schartz@tklaw.com
THOMPSON & KNIGHT, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

Attorneys for Defendants
CLP Resources, Inc. and
Labor Ready Central, Inc.

Angela Marshall
angela.marshall@ogletreedeakins.com
Michael Fox
Michael.fox@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
301 Congress Avenue, Suite 1150
Austin, TX 78701
Telephone: 512-344-4703
Facsimile: 512-344-4701

Attorneys for Defendants
Mechanical Technical Systems, Inc.
and Comfort Systems USA, Inc.

_____
Aaron Johnson
Attorney for Plaintiffs