UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE RODRIGUEZ, VALENTIN RODRIGUEZ, ALEJANDRO MONDRAGON and RUBEN PEREZ, Individually and on Behalf of All Others Similarly Situated<br>*Plaintiffs*<br><br>v.<br><br>MECHANICAL TECHNICAL SERVICES, INC.; COMFORT SYSTEMS USA, INC.; CLP RESOURCES, INC., and LABOR READY CENTRAL, INC.<br>*Defendants* | §§§§§§§§§§§§§§§ | Civil Action No. 1:12-cv-00710-LY<br><br><br><br>Jury Demanded |

**PLAINTIFFS' REPLY TO MTECH'S AND COMFORT SYSTEMS USA'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR PROTECTIVE ORDER, CORRECTIVE NOTICE, SANCTIONS, AND PRELIMINARY INJUNCTION**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs file this Reply to Defendants Mechanical Technical Services, Inc.'s and Comfort Systems USA, Inc.'s (collectively referred to hereinafter as "Mtech") Response (Doc. # 21) to Plaintiffs' Emergency Motion for Protective Order, Corrective Notice, Sanctions, and Preliminary Injunction (Doc. # 17), and in support thereof respectfully show:

**I.     Background**

During September and October, 2012, Plaintiffs' counsel conferred with Mtech's counsel seeking to negotiate an agreed order granting conditional certification and notice to class members. Those negotiations broke down on October 10, 2012 when Mtech indicated it would not agree to certification and notice of the Plaintiffs' proposed class.

It is undisputed that early the following week Mtech instructed many of its employees, one-by-one, to leave their assigned construction job sites during the workday and report to

Mtech's headquarters, where many, if not all of them. signed declarations denying the Plaintiffs' allegations, thereby5 disavowing their rights to participate in this lawsuit. (*See* Plfs. Mot., 2; Mtech Resp., 2.; Declarations of 13 Mtech Employees and Managers, Docs. # 20-1 - 13.)

It is undisputed that, the following Tuesday, Ernesto Perez was ordered to report to Mtech's headquarters under the pretext of assigning him to a new project, but instead was fired. (*See* Plfs. Mot., 3; Mtech Resp., 3; Zambrano Dec., ¶¶ 9-10.) Mtech claims the termination was due to a "minor reduction in force" of five employees, and denies it had anything to do with the lawsuit. (Mtech Resp., 3.) Mtech further denies Perez's testimony that he was fired immediately after refusing to sign a statement essentially identical to the declarations Mtech collected from other employees. (*Id.*) However, Mtech agrees that Perez was a good employee and does not deny he held a "lead" position and had a history of positive performance evaluations over his eight years with Mtech. (*Id.*; *see* Plfs. Mot., 2.) It is also undisputed that Mtech's management knew that Ernesto Perez is the brother-in-law of Lead Plaintiffs Jose and Valentin Rodriguez. (*See* Plfs. Mot., 2; Mtech Resp., 2-3; Zambrano Dec., ¶¶ 7-8.)

II. **Authority and Argument**

A. **Mtech's Evidentiary Objections**

Mtech argues that certain portions of Ernesto Perez's declaration regarding statements made by other Mtech employees or managers are inadmissible hearsay. However, a statement offered against an opposing party "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay. Fed. R. Evid. 801(d)(2)(D). Furthermore, "[h]earsay within hearsay is not excluded . . . if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. Every statement to which Mtech objects is admissible because it was made by a current Mtech agent or employee

about a subject squarely within the scope of his employment— Mtech's pay practices.

### B. Protective Order, Sanctions, and Corrective Notice

1. <u>The employer-employee relationship is inherently conducive to coercion and is sufficient grounds for limiting speech both pre- and post-certification.</u>

Mtech claims the Court "may restrict communications only upon a 'clear record and specific findings' that 'a party ***has engaged*** in misleading or coercive behavior . . ." (Mtech Resp., 5. (emphasis added) (citing *Longcrier* v. *HL-A Co., Inc.,* 595 F.Supp.2d 1218, 1228 (S.D. Ala. 2008).) However, the foregoing sentence takes two independent quotes from different paragraphs out of context and misleadingly strings them together to reach an incorrect conclusion. The complete proposition from which the first clause is excised reads: "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation ***and the potential interference*** with the rights of the parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981) (emphasis added). The second clause is taken from a sentence that merely recognized the most obvious application of this rule—that "courts have routinely exercised their discretion to restrict communications . . . where a party ***has engaged*** in misleading or coercive behavior." *Longcrier*, 595 F.Supp.2d at 1228 (emphasis added).

But, *Gulf Oil* was clear that district courts need not sit idly by until a defendant ***has already engaged*** in improper communications. Rather, district courts may "restrict certain communications in order to prevent frustration of the policies of Rule 23" as long as there is "a specific record showing by the moving party of the particular abuses ***by which it is threatened***" and the court "identif[ies] the ***potential abuses*** being addressed . . . ." 452 U.S. 89 at 102.

Mtech argues that "the mere possibility of some 'inherent coerciveness in the

employment relationship is insufficient" to establish a "clear record and specific findings." (Mtech Resp., 5.) However, there is abundant authority holding that an ongoing employment relationship raises more than "the mere possibility" of coercion, but rather is inherently coercive and sufficient to limit communications both pre- and post-certification. *See* Plfs. Mot., 5-6 (citing numerous cases from within the Fifth Circuit and around the country holding that an ongoing business relationship, especially an employment relationship, establishes a sufficiently clear record and specific finding of potential or threatened abuse to limit communications with potential class members, pre- or post-certification); *e.g.*, *Abdallah v. Coca-Cola Company*, 186 F.R.D. 672, 678 (N.D.Ga.1999) (noting that, even though Coca-Cola had not given the court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation, simple reality suggests that the danger of coercion is real and justifies imposition of limitations on Coca-Cola's communications with potential class members, regardless of whether communications occur before or after class certification).[1]

Moreover, the approach Mtech urges would demonstrate a detached, unrealistic conception of the realities of the typical workplace. The Supreme Court has cautioned that any evaluation of communications in the employer-employee context "must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be

---

[1] Courts routinely limit speech with potential class member, both pre- and post- certification, even where the parties share an ongoing business relationship that is less inherently coercive than that between employer and employee. *E.g.*, *In Re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), (defendant banks' inclusion of arbitration clauses in cardholder notices to class members before certification was "potentially coercive and improper," because the class members "depend on defendants for their credit needs and "have no other realistic source of information regarding this litigation."); *Ralph Oldsmobile, Inc. v. General Motors Corp.,* No. 99-CIV-4567, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001), (ordering pre-certification corrective notice, despite lack of evidence of actual coercion, because the possibility of coercion existed due to the parties' ongoing business relationship (GM and GM dealers)); *Jenifer v. Delaware Solid Waste Authority*, No. Civ. A. 98-270/98-565, 1999 U.S. Dist. Lexis 2542, 1999 WL 117762 (D. Del. Feb. 25, 1999) (ordering pre-certification corrective notice due to the possibility of coercion in the context of the ongoing business relationship (waste disposal site and waste disposal companies)).

more readily dismissed by a more disinterested ear." *NLRB v. Gissel Packing Co.*, 23 L.Ed.2d 547, 617-18 (1969). Indeed, as one court noted:

> [I]t would be hard to find a more challenging conflict for a current employee to be placed in than to be interviewed by counsel for their current employer concerning allegations about workplace abuses. By its very nature, a potentially adversarial interview process between an employee and an employer and its lawyer is fraught with pitfalls for the employee, most notably the implied threat of loss of employment.

*Braun v. Wal-mart Stores Inc.*, 60 Pa. D. & C.4th 13, 2003 WL 1847695, *2 (Ct. Com. Pl. 2003).

        2.    <u>Courts routinely restrict pre- and post-certification communications that are one-sided, unbalanced, coercive, confusing, misleading, or that encourage class members not to join the lawsuit or otherwise undermine cooperation with or confidence in class counsel.</u>

Even if the nature of the ongoing employment relationship were not sufficient to establish coercive influence, Courts uniformly agree that restrictions on defendants' contacts with putative class members is necessary, pre- or post-certification, when the communications are less than neutral. *See, e.g.*, *Longcrier,* 595 F.Supp.2d at 1228 (citing *Maddox v. Knowledge Learning Corp.*, 499 F. Supp.2d 1338, 1344 (N.D. Ga. 2007) ("it is within the court's discretion to prohibit [counsel] from issuing pre-certification statements that are factually inaccurate, unbalanced, or misleading"); *Jones v. Casey's General Stores*, 517 F. Supp.2d 1080, 1089 (S.D. Iowa 2007) ("[O]ne-sided, misleading communications with putative opt-in collective members … could easily have the effect of tainting the entire putative class and jeopardizing this entire litigation."); *Sjoblom v. Charter Communications, LLC,* 2007 WL 5314916, *3 (W.D. Wis. Dec. 26, 2007) ("Abusive practices that district courts have considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; contain false, misleading or confusing statements; and undermine cooperation with or confidence in class counsel."); *Belt v. Emcare, Inc.*, 299 F. Supp.2d 664, 667

(E.D. Tex. 2003) ("Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to … encourag[e] class members not to join the suit."); 5 *Newberg on Class Actions,* at § 15:9 ("Defendants … may not give false or misleading information or attempt to influence class members in making their decision whether to remain in the class.") (citation omitted)); *Mevorah v. Wells Fargo Home Mortg., Inc.,* 2005 U.S. Dist. LEXIS 28615, 2005 WL 4813532, *3 (N.D. Cal. Nov. 17, 2005) (Defendants' communications with potential class members "may have caused confusion among potential class members regarding their rights").

Mtech attempts to distinguish the relevant authority by pointing to the more egregious violations committed in some of those cases. (Mtech Resp., 5-6, 9-10.) However, the facts in *Sjoblom v. Charter Communications, LLC* are strikingly similar to the present case. There, employees were asked to meet individually with the defendant's attorneys during work hours as part of a "blitz campaign of affidavit gathering." 2007 WL 5314916 at *4. The attorneys had each declarant sign a consent form that "appropriately informed employees of the lawsuit and that they were not represented by defendants' attorneys, had the right to refuse to be interviewed and could not be retaliated against for not participating in the interview." *Id.* However, the Court struck the 62 affidavits, restricted further contact, and found corrective notice appropriate if the class were later certified because the form did not clearly "alert an employee to the possibility that he or she may be a class member entitled to recover money from defendants." *Id.* "Further, the notice did not mention that signing an affidavit might waive the affiant's right to become a named class member." *Id.*

       3.    <u>There is ample evidence that Mtech's communications were improper.</u>

The testimony of Ernesto Perez provides numerous examples of how Mtech's

communications were one-sided, unbalanced, coercive, confusing, misleading, or that encourage class members not to join the lawsuit or otherwise undermine cooperation with or confidence in class counsel. Mtech's Response consists largely of denying Perez's testimony and simply asserting it is not credible. (Mtech Resp., 1-3, 7-9.) In assessing the credibility of the witnesses, it is important to note that Ernesto Perez gains nothing by reporting the facts of Mtech's coercive communications, while Mtech has a strong financial interest in refuting his testimony.

Even if the Court were not convinced by Ernesto Perez's testimony, Mtech's own account of the facts demonstrates that any reasonable employee would feel a coercive influence to toe the company line in opposing this lawsuit. Mtech denies that its managers told employees that if they joined the lawsuit it might put Mtech out of business—an explicit threat against their livelihoods. (Mtech Resp., 8.) However, Mtech admits it told the employees that Mtech was being sued by former employees for unpaid off-the-clock work, and that the interviews were conducted to seek information "to assist in defending the lawsuit" and that "may help in convincing the Court to refuse to certify the claims as a collective action." (Consent Form, Doc. # 21-1; *see also* Declaration of Paul Zambrano (Doc. # 21-2), ¶ 8 (Piping Superintendent does not recall whether he stated that the "company is getting sued big time" when he "asked [an employee] to report to M-Tech's offices.")

**Notably, the Consent Form does not notify signees that they might be entitled to recover money in this lawsuit nor that signing the statement likely will preclude them from recovering money—the same conspicuously misleading omissions that were the main bases of the protective orders in *Sjoblom* and *Longcrier*.**

Furthermore, Mtech has offered no admissible evidence that the declarants were given even the defective disclosures in the Consent Form, which is a relatively sanitized version of the

communications compared to Ernesto Perez's testimony. Mtech alleges that each declarant signed the Consent Form, but offers as evidence only one unsigned Consent Form, which this Court must disregard. Fed. R. Evid. 1002.

In the real world, when an hourly, blue-collar employee is summoned to report alone to the foreboding environment of company headquarters in the midst of a collective action against the company by its employees, and is "asked" to speak with the company's lawyer to provide information to assist in defending the lawsuit" and that "may help in convincing the Court to refuse to certify the claims as a collective action," he very reasonable fears a threat to his livelihood if he crosses the line the company clearly has drawn in the sand.

> 4. <u>The requested relief is carefully tailored and sensitive to the First Amendment.</u>

Mtech argues that a pre-certification protective order "leads to the absurd outcome that employers could not take proper measures, prior to certification, to investigate the claims made against them and develop a defense." (Mtech Resp., 5.) To the contrary, courts have long recognized that there is nothing absurd about limiting defendants' investigations to the bounds of the formal discovery process, the rules of which have been carefully developed over the years to ensure fairness to all parties to a lawsuit. For example, in *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1033-34 (E.D. Wash. 1985) the Court restricted defense counsel contacts of class members both pre- and post-certification and noted that the *Gulf Oil* Court's concern with a blanket restriction was not implicated where defense counsel have access to the information they seek through discovery. The Court explained:

> [T]he defendants articulated reason for contacting class members here is to obtain information to aid in the preparation of its own case. As was noted by the court in [*Resnick v. American Dental Ass'n*, 95 F.R.D. 372 (N.D. Ill. 1982)], such a need is present in every case and can be readily filled by the use of the discovery process. *Id.* at 377. Moreover, class members gain no benefit from such contact.

Quite the contrary, the imbalance in knowledge and skill which exists between class members and defense counsel presents an extreme potential for prejudice to class members' rights.

Furthermore, court after court has noted that restrictions on defendants' communications with potential class members are sufficiently sensitive to First Amendment concerns when they are tailored in time and scope to communications regarding the lawsuit in question during its pendency. *E.g., Belt*, 299 F. Supp.2d at 669.

### C. Preliminary Injunction

Mtech does not engage Plaintiffs' arguments on the following elements of their motion for preliminary injunction: danger of irreparable injury; that the threatened injury outweighs any harm to the Defendants; and that the preliminary injunction will not harm the public interest. (*See* Plfs. Mot., 9-11; Mtech Resp., 13.) Therefore, Plaintiffs will focus only on the remaining points Mtech raises.

#### 1. Plaintiffs' Motion is ripe.

Plaintiffs intend promptly to file a Motion for Leave to Amend their Complaint to add the retaliation claim. Plaintiffs have contacted counsel for Defendants to confer about filing the motion unopposed in accordance with Local Rule CV 7(i) and are awaiting their response.

#### 2. There is a substantial likelihood that Plaintiffs will prevail on the merits.

Mtech suggests that preliminary injunctions cannot issue without "unambiguous" or "undisputable" evidence on the merits. (*See* Mtech Resp., 12.) To the contrary, the Court is "not deciding whether [the movant] "will ultimately win." *Glenwood Bridge v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991). "The proceedings are at an early stage and to prejudge the evidence before it is fully collated and demonstrated is basically unfair. Under these circumstances, the court should avoid deciding with any degree of certainty who will succeed or

not succeed." *O'Connor v. Peru State College*, 728 F.2d 1001, 1002 (8th Cir. 1984). Rather, the question is only whether there is "a substantial likelihood that the plaintiff will prevail" because "[a] preliminary injunction functions merely to preserve the status quo until the merits of a claim can be adjudicated." *Middleton-Keirn v. Stone*, 655 F.2d 609, 610 (5th Cir. 1981).

Retaliatory discharge in the FLSA context is governed by the McDonnell Douglas burden-shifting framework. *Hagan v. Echo star Satellite, L.L.C*., 529 F.3d 617, 624 (5th Cir. 2008). First, a plaintiff must make a prima facie showing of (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action. If a plaintiff meets this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its decision. The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. *Id.*

Plaintiffs can establish pretext by showing that Defendants' "proffered explanation is false or 'unworthy of credence.'" *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5th Cir. 2003)). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147 (2000).

Ernesto Perez easily has established his prima facie case because he was fired immediately after refusing to sign a false statement disavowing his right to participate in this FLSA lawsuit. (Perez Dec., ¶ 5, Doc. # 17-1.) The burden now shifts to Mtech to prove a legitimate, non-discriminatory reason for firing Perez. However, Mtech has provided nothing more than the conclusory statement that Perez was fired as part of a "minor reduction in force" of five people that happened in the course of business and had nothing to do with this lawsuit.

(Mtech Resp., 3.) Mtech has neither explained anything about the circumstances of the alleged reduction in force nor offered a shred of evidence to support its allegation.

Even if Mtech were to establish a legitimate business reason, Plaintiffs have offered ample evidence to establish it is mere pretext. For the last several years Perez was considered a "lead" worker, which means he was among the most experienced workers on any given crew and assisted the foremen in monitoring and guiding the rest of the crew. (Perez Dec., ¶ 6.) Perez always had received positive performance evaluations, and never was laid off or terminated before during Mtech's periods of mass layoffs. (*Id.*) Furthermore, Perez asked whether he was being laid off or terminated, and Ed Neal responded that he was terminated. (*Id.* at ¶ 5.)

### III. Conclusion

This Court has the duty and authority to supervise a fair notice process in order to serve the broad remedial goals of the FLSA. Plaintiffs respectfully request that this Court grant the requested relief in order to remedy Mtech's coercive, chilling communications with the potential class members and to prevent further irreparable harm.

*Plaintiffs' Reply to Mtech's and Comfort Systems USA's*  
*Response to Plaintiffs' Emergency Motion*                                                                 Page 11 of 13

Respectfully submitted,

By: _____
Aaron Johnson
Texas State Bar No. 24056961
aaron@equaljusticecenter.org
Chris Willett
Texas State Bar No. 24061895
chris@equaljusticecenter.org
EQUAL JUSTICE CENTER and
TRANSNATIONAL WORKER RIGHTS CLINIC
510 S. Congress Ave., Suite 206
Austin, Texas 78704
Tel.: (512) 474-0007 ext-104
Fax: (512) 474-0008

J. Derek Braziel
Texas Bar No. 00793380
jdbraziel@l-b-law.com
Meredith Mathews
Texas Bar No. 24055180
mmathews@l-b-law.com
LEE & BRAZIEL, L.L.P.
1801 N. Lamar St. Suite 325
Dallas, Texas 75202
Tel: (214) 749-1400
Fax: (214) 749-1010
www.overtimelawyer.com

Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

This is to certify that on November 16, 2012, I electronically transmitted the above document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants below:

| | |
|---|---|
| David R. Ongaro<br>dongaro@obllaw.com<br>Amelia D. Winchester<br>awinchester@obllaw.com<br>ONGARO, BURTT & LOUDERBACK<br>650 California Street, Fifth Floor<br>San Francisco, California 94108<br>Telephone: (415) 433-3901<br>Facsimile: (415) 433-3950 | Angela Marshall<br>angela.marshall@ogletreedeakins.com<br>Michael Fox<br>Michael.fox@ogletreedeakins.com<br>OGLETREE, DEAKINS, NASH,<br>SMOAK & STEWART, P.C.<br>301 Congress Avenue, Suite 1150<br>Austin, TX 78701<br>Telephone: 512-344-4703<br>Facsimile: 512-344-4701 |
| Danley Cornyn<br>danley.cornyn@tklaw.com<br>THOMPSON & KNIGHT, LLP<br>98 San Jacinto Blvd., Suite 1900<br>Austin, Texas 78701<br>Telephone: (512) 469-6100<br>Facsimile: (512) 469-6180 | Attorneys for Defendants<br>Mechanical Technical Systems, Inc.<br>and Comfort Systems USA, Inc. |

Elizabeth Schartz
elizabeth.schartz@tklaw.com
THOMPSON & KNIGHT, LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: (214) 969-1700
Facsimile: (214) 969-1751

Attorneys for Defendants
CLP Resources, Inc. and
Labor Ready Central, Inc.

_____
Aaron Johnson
Attorney for Plaintiffs