**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOSE RODRIGUEZ, VALENTIN** | § | |
| **RODRIGUEZ, ALEJANDRO** | § | |
| **MONDRAGON AND RUBEN** | § | |
| **PEREZ, INDIVIDUALLY AND ON** | § | |
| **BEHALF OF ALL OTHERS** | § | |
| **SIMILARLY SITUATED,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **V.** | § | **CIVIL NO. A-12-CV-710-LY** |
| | § | |
| **MECHANICAL TECHNICAL** | § | |
| **SERVICES,  INC.; COMFORT** | § | |
| **SYSTEMS USA, INC.;** | § | |
| **CLP RESOURCES, INC., AND** | § | |
| **LABOR READY, CENTRAL, INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

**ORDER**

Before the Court are Plaintiffs' Emergency Motion for Protective Order, Corrective Notice, Sanctions, and Preliminary Injunction, filed November 3, 2012 (Clerk's Dkt. #17); Defendants Mechanical Technical Services, Inc. and Comfort Systems USA, Inc.'s Response to Plaintiffs' Emergency Motion for Protective Order, Corrective Notice, Sanctions, and Preliminary Injunction, filed November 9, 2012 (Clerk's Dkt. #21); Defendants CLP Resources, Inc.'s and Labor Ready Central, Inc.'s Response in Opposition to Plaintiffs' Emergency Motion for Protective Order, Corrective Notice, Sanctions, and Preliminary Injunction, filed November 12, 2012 (Clerk's Dkt. #23); Plaintiffs' Reply to Mechanical Technical Services, Inc.'s and Comfort Systems USA, Inc.'s Response to Plaintiffs' Emergency Motion for Protective Order, Corrective Notice, Sanctions, and Preliminary Injunction, filed November 16, 2012 (Clerk's Dkt. #36); Plaintiffs' Reply to CLP

Resources, Inc.'s and Labor Ready Central, Inc.'s Response to Plaintiffs' Emergency Motion for Protective Order, Corrective Notice, Sanctions, and Preliminary Injunction, filed November 16, 2012 (Clerk's Dkt. #37); and Defendants Mechanical Technical Services, Inc. and Comfort Systems USA, Inc.'s Sur-Reply to Plaintiffs' Reply to Defendants' Response to Plaintiffs' Emergency Motion for Protective Order, for Sanctions and for Preliminary Injunction, filed November 20, 2012 (Clerk's Dkt. #40).

On November 5, 2012, the District Court referred the portions of the motion requesting relief in the form of a protective order, corrective notice, and sanctions, as well as any response, reply, surreply, or any related motions that may be filed to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The undersigned held an evidentiary hearing on the matters on Tuesday November 20, 2012.

## I. BACKGROUND

Plaintiffs bring this case individually and have sought conditional certification as a collective action on behalf of a class of more than 100 other similarly situated workers, who were or currently are employed by Mechanical Technical Services, Inc. ("Mtech") to install heating, ventilation, and cooling ("HVAC") systems. Comfort Systems USA, Inc. ("Comfort Systems") is a national HVAC company that provides installation and maintenance services through numerous smaller companies that it has acquired. Mtech is a wholly-owned subsidiary of Comfort Systems that provides HVAC installation and maintenance services throughout Central Texas. Mtech employs or has employed some of its workers through temporary staffing agencies, including CLP and Labor Ready.

In their complaint, Plaintiffs allege Defendants required Plaintiffs to work more than forty

2

hours a week but failed to record this time and did not pay time-and-a-half overtime compensation in violation of the Fair Labor Standards Act ("FLSA"). Pending before the Court is Plaintiffs' Motion for Conditional Certification as Collective Action and Notice to Class Members and Request for Expedited Consideration, filed October 26, 2012 (Clerk's Dkt. #12).

In the present motion, Plaintiffs allege Mtech conducted a campaign to dissuade its employees who are potential class members from opting into this FLSA collective action and further coerced them into signing false declarations against their interest denying that they ever worked "off the clock" and were not paid for overtime hours. Also, Plaintiffs allege Mtech terminated Ernesto Perez ("Perez"), the brother-in-law of the lead plaintiffs in this suit, for refusing to sign the above-mentioned false statement.

Regarding the portions of the motion referred to the undersigned, Plaintiffs seek 1) a protective order enjoining Defendants from communicating further with the potential class members about this lawsuit; 2) an order that Mtech issue a corrective notice to the potential class members; and 3) monetary and nonmonetary sanctions.

## II. RELEVANT FACTS

Plaintiffs' motion is based on the Sworn Declaration of Ernesto Perez as well as Perez' testimony during the hearing. In his declaration Perez states that early in the week of October 15 – 19, 2012 he witnessed Paul Zambrano ("Zambrano"), an Mtech manager, speak with his coworker Mike Arasano ("Arasano"). Perez states that Zambrano said Mtech's lawyers needed to talk to Arasano because Mtech is "getting sued big time" and then Zambrano looked at Perez indicating he knew Perez was the brother-in-law of the two lead plaintiffs. (Perez Decl. ¶3).

Perez further states that during that week his coworker, Angel, and foreman, Miguel, were

instructed, one-by-one, to leave the jobsite and report to Mtech's main office. Perez states that Miguel, Angel, and Arasano reported that they were met by Mtech manager Ed Neal ("Neal") and lawyers who asked them questions about whether they worked overtime without being paid and were then instructed to sign papers. Perez states that his coworkers[1] reported to Perez that they were told that Mtech is being sued for wage violations, that Mtech will have to pay a lot of money to resolve the lawsuit, and that if more workers join the suit, it will likely ruin the business and put everyone out of work. Perez further states that a foreman, Terrell Jones ("Jones"), told Perez that Jones was instructed to send each member of his crew to the office to talk to Mtech managers and lawyers about the lawsuit. (Perez Decl. ¶3).

Perez states that on October 23, 2012 he was instructed to report to Mtech's main office where he was met by Neal and Zambrano. Perez alleges they asked him to sign a statement that he never worked off-the-clock and never worked overtime without being paid. Perez refused, and Neal terminated Perez. Perez states he understood the conversation to mean that Neal terminated his employment for refusal to sign the statement about unpaid overtime hours.  (Perez Decl. ¶5).

Defendants provide no evidence regarding the interviews with Mtech employees other than the meeting where Perez was terminated; however, Mtech and Comfort Systems' counsel, Angela N. Marshall ("Marshall"), provides her recollection of October 15 and 16, 2012 interviews with Mtech employees in Mtech and Comfort Systems' response to the present motion.[2]

---

[1] Although not specified, presumably the aforementioned coworkers.

[2] Marshall states that on October 15 and 16, 2012 she and her associate conducted interviews of Mtech employees at Mtech's facilities. At the beginning of each meeting, Mtech's counsel notified the interviewee of this lawsuit, of his potential to be a plaintiff and to recover damages if the lawsuit were successful, that Mtech's counsel was conducting the interviews to assist its defense of Mtech  in the lawsuit, and that the interview was entirely voluntary. Mtech's counsel then asked each interviewee to read a written consent form and sign if they agreed to be interviewed. She states that no member of Mtech management was present for any of the interviews.

4

Zambrano and Neal's declarations contradict Perez' characterization of both the encounter between Zambrano, Arasano, and Perez as well as the meeting in which Perez was terminated. Concerning the encounter between Zambrano, Arasano, and Perez, Zambrano's declaration states that he does not recall stating the "company is getting sued big time" to Arasano and does not recall giving Perez a look when he asked Arasano to report to Mtech offices. He further states that, if he did look at Perez, it was not meant to indicate Perez had any connection to the lawsuit. (Zambrano Decl. ¶8).

Regarding Perez' termination meeting, Neal and Zambrano's declarations state that on October 23, 2012 Perez was called into a meeting with Neal and Zambrano. Neal told Perez that the Company was reorganizing the workforce and that his position was being eliminated. Neal gave Perez his business card, told him he was a good employee, and that Neal would serve as a great reference. Neal and Zambrano state neither Neal nor Zambrano asked Perez to sign a statement saying that he never worked overtime without being paid properly or that he never worked off-the-clock. Nobody in that meeting even raised or discussed this lawsuit, alleged overtime work, or alleged off-the-clock work. (Zambrano Decl. ¶4-6; Neal Decl. ¶3-7).

At the hearing, Plaintiffs called Perez to testify and Mtech called Neal and Zambrano to testify. Perez, Neal and Zambrano's testimony agreed with that offered in their declarations.

In addition, attached to Mtech's Response to Plaintiffs' Motion to Certify Class Conditional Certification as FLSA Collective Action, Notice to Potential Class Members, and Request for Expedited Consideration (Clerk's Dkt. #20) are the declarations of thirteen Mtech employees. The declarations each state that Mtech has never directed or required them to perform work off-the-clock and that Mtech has paid them for all the time they have worked. All of the declarations were signed

on October 15 or 16, 2012, consistent with the meeting dates as alleged by Perez.

### III. LEGAL STANDARDS

As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in FLSA collective actions. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Moreover, a court's authority to control counsels' conduct in a FLSA collective action includes the authority to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* Because of the potential for abuses in collective actions, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Company v. Bernard*, 452 U.S. 89, 100 (1981).

Some courts "have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 class actions by encouraging class members not to join the suit." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667-68 (E.D. Tex. 2003) (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir. 1985)). Although courts have broad authority to manage the collective action, the First Amendment requires courts impose relief "that limits speech as little as possible consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 102.

In seeking a protective order, the movant has the burden to demonstrate good cause for its issuance. FED. R. CIV. P. 26(c)(1). The movant is required to show "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.

6

3 (5th Cir. 1978)).

## IV. ANALYSIS

Plaintiffs request a protective order enjoining Defendants from communicating further with the potential class members about this lawsuit. As stated above, it is Plaintiffs' burden to establish good cause for a protective order. Plaintiffs offer three pieces of evidence, all based on Perez' testimony that: (1) Perez' coworkers informed Perez that, during the meeting, they were told Mtech is being sued for wage violations, Mtech will have to pay a lot of money to resolve the lawsuit, and, if more workers join the suit, it will likely ruin the business and put everyone out of work; (2) Zambrano said Mtech's lawyers needed to talk to Arasano because Mtech is "getting sued big time" and then looked at Perez indicating he knew Perez was the brother-in-law of the two lead plaintiffs; and (3) Neal asked Perez to sign a statement that he never worked off-the-clock and never worked overtime without being paid and, when Perez refused, Neal terminated him.

Concerning Perez' recollection of what his coworkers said they were told in a meeting, Mtech has objected to this evidence as hearsay. Plaintiffs argue the statements are party admissions under Federal Rule of Evidence 801(d)(2)(D). Rule 801(d)(2)(D) provides that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," is not hearsay. FED. R. EVID. 801(d)(2)(D). The Rule further provides that "[t]he contents of the statement ... are not alone sufficient to establish ... the agency or employment relationship and scope thereof under subdivision (D)." FED. R. EVID. 801(d)(2).

Here, Perez' declaration does not identify the names or job titles of any of the employees who allegedly made the statements in question. (Perez Decl. ¶4). Even assuming Perez refers to Miguel, Angel, and Arasano, Plaintiffs also fail to establish that these employees were authorized to speak

on behalf of Mtech. *See Kelly v. Labouisse*, 364 Fed.Appx. 895, 896 (5th Cir. 2010) (citing *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991) ("the inquiry regarding scope of employment was whether the speaker was authorized to act for his principal concerning the matter about which he allegedly spoke")). Thus, the statements in question do not fall under Rule 801(d)(2)(D) and are inadmissible hearsay. Although Defendants provide no evidence regarding these interviews, Plaintiffs' evidence is inadmissible hearsay and it is their burden to establish good cause for the protective order. Accordingly, the Court will not consider the hearsay statements of other employees as described by Perez.

The only remaining evidence is Perez' declaration and testimony concerning the encounter between Zambrano, Arasano, and Perez as well as Perez'termination meeting. At the hearing Zambrano and Neal offered testimony concerning both incidents which was directly contradictory to that of Perez. The undersigned pointed out at the hearing that, although the testimony was contradictory, that alone does not establish any bad faith by the witnesses. Under the circumstances, memory of stressful events such as terminations may be malleable. The undersigned thus does not find any witness more credible than another, and must rely on other evidence to determine whether Plaintiffs' requested relief is warranted. However, as mentioned above, the only other evidence is inadmissible hearsay.

Plaintiffs called only one witness, Perez, to testify that Mtech conducted a campaign to dissuade its employees from opting into the potential FLSA collective action and coerce them into signing false statements against their interest. Plaintiffs thus seek to limit Defendants' First Amendment rights in regard to all potential class members based upon Perez' recollection of Zambrano's statements and Perez' termination meeting, the facts of which are contested by Neal and

Zambrano.

Plaintiffs could have subpoenaed Miguel, Angel, and Arasano, all of whom allegedly reported to Perez that they were coerced into signing false statements. Plaintiffs could have subpoenaed any of the thirteen Mtech employees whose declarations were attached to the Mtech's response to the motion for class certification (Clerk's Dkt. #20). Despite the many witnesses who could have testified directly to the issue of coercion, Plaintiffs chose to call only Perez, whose testimony is directly contradicted by two other witnesses.

Given the contradictory testimony and the lack of additional evidence by the movant, despite clear opportunity for further testimony, Plaintiffs have failed to demonstrate good cause for the proposed protective order as well as the other relief sought. Thus, the Court **DENIES** Plaintiffs' request for a protective order. Given Plaintiffs' failure to meet their burden for a protective order, the Court similarly **DENIES** Plaintiffs' request for an order that Mtech issue a corrective notice to the potential class members. The Court further **DENIES** Plaintiffs' request for monetary and nonmonetary sanctions.

Accordingly, Plaintiffs' Emergency Motion for Protective Order, Corrective Notice, Sanctions, and Preliminary Injunction, filed on November 3, 2012 (Clerk's Dkt. #17) to the extent it requests relief in the form of a protective order, corrective notice, and sanctions is **DENIED**. The Preliminary Injunction remains to be decided by the District Court Judge.

SIGNED on November 27, 2012.

_____

MARK  LANE
UNITED STATES MAGISTRATE JUDGE

9