IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSE RODRIGUEZ, VALENTIN | ) | No. 1:12-CV-710-DAE |
| RODRIGUEZ, ALEJANDRO | ) | |
| MONDRAGON and RUBEN PEREZ, | ) | |
| Individually and on Behalf of All Others | ) | |
| Similarly Situated | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MECHANICAL TECHNICAL | ) | |
| SERVICES, INC.; COMFORT TECH | ) | |
| USA, INC.; | ) | |
| | ) | |
| Defendants. | ) | |

ORDER AWARDING PLAINTIFFS' ATTORNEYS' FEES

Before the Court is Plaintiffs' Motion for Award of Attorney Fees

(Dkt. # 170.)   Pursuant to Local Rule CV-7(h), the Court finds this matter suitable

for disposition without a hearing.  After carefully reviewing the briefings the Court

**GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion.

BACKGROUND

Plaintiffs initiated this class action lawsuit against Mechanical

Technical Services, Inc. ("Mtech"), Comfort Systems USA, Inc. ("Comfort

Systems"), CLP Resources, Inc. ("CLP"), and Labor Ready, Central, Inc. ("Labor

1

Ready") (collectively "Defendants") on August 6, 2012 under the Fair Labor

Standards Act (FLSA) alleging that the Defendants failed to pay compensation for

overtime.  ("Compl.," Dkt. # 1.)

  In the initial phase of this matter, the parties litigated a Motion for

Corrective Notice, Sanctions, and Preliminary Injunction (Dkt. # 44), the

conditional certification of a class (Dkt. # 52), a Motion to Compel a Class List

(Dkt. # 102), a Motion for Supplemental Notice to the putative class (Dkt. # 116)

and a Motion for Equitable Tolling.  (Dkt. # 123.)  From July, 2013 through

January, 2014, the Court received multiple Notices of Filing Consent to Become a

Plaintiff.  (Dkt. ## 53, 57-65, 69, 71, 73-80, 94.)

  The Plaintiffs filed an amended complaint on December 17, 2014.

(Dkt. # 145.)  On January 20, 2015, Plaintiffs reached a settlement with CLP and

Labor Ready and filed a joint motion for court approval of the settlement

agreement.  (Dkt. # 149.)  The terms of the settlement agreement included a

$99,900.00 payment for damages (Dkt. # 149-1 ¶ 1) and $40,060.00 in attorney's

fee from Labor Ready and CLP.  (Dkt. # 149-1 ¶ 1(p).)  On January 20, 2015 the

Court issued a stipulated judgment dismissing defendants CLP and Labor Ready.

(Dkt. # 150.)  Following the dismissal of these two defendants, Mtech and Comfort

Systems submitted motions for summary judgment (Dkt. # 154) and partial

summary judgment on the issue of prevailing wage damages.  (Dkt. # 155.)

Plaintiffs filed a competing motion for partial summary judgment.  (Dkt. # 156.)

Before this Court decided the various motions for summary judgment, the Defendants gave the Court notice of an offer of judgment on May 4, 2015. (Dkt. # 163)   The offer of judgment set out that the Defendants would pay the Plaintiffs a "gross pre-tax sum of $200,000 . . . and attorney's fees and costs reasonably and necessarily incurred."  (Dkt. # 163-1, Ex. A.)  The Plaintiffs filed notice of their acceptance of the offer of judgment on May 12, 2015.  (Dkt. # 167.) Thereafter, the Clerk of Court issued a valid, final judgment on May 20, 2015 in favor of Plaintiffs and opt-in plaintiffs against Defendants.  (Dkt. # 168.)  The Plaintiffs subsequently filed a Bill of Costs in the amount of $9,167.60. (Dkt. # 169.)

Throughout the course of litigation, the Plaintiffs were represented by the Equal Justice Center ("EJC") ("Johnson Decl.," Dkt. # 170-2) and J. Derek Braziel of the law firm Lee & Braziel.  ("Braziel Decl.," Dkt. #170-4.)

LEGAL STANDARD

The Fair Labor Standards Act (FLSA) states that in an action arising under the Act the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  Fair Labor Standards Act, 29 U.S.C. § 216(b) (2012); <u>Black v. SettlePou, P.C.</u>, 732 F.3d 492, 502 (5th Cir. 2013) ("Under the FLSA, an

employer who violates the statute is also required to pay attorney's fees.").

   To determine the amount of a reasonable attorney's fee, the Fifth Circuit applies a two-step process. <u>Black</u>, 732 F.3d at 502.  First, the Court calculates the fee using the "lodestar" method by "multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." <u>Id.</u>  "There is a strong presumption of the reasonableness of the lodestar amount. <u>Id.</u> citing <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 552 (2010).  However, "[p]laintiffs seeking attorney's fees have the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment." <u>Id.</u>  "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." <u>Saizan v. Delta Concrete Prod. Co., Inc.</u>, 448 F.3d 795, 799 (5th Cir. 2006).  "The court should exclude all time that is excessive, duplicative, or inadequately documented [and] [t]he hours surviving this vetting process are those reasonably expended in litigation.  <u>Watkins v. Fordice</u>, 7 F.3d 453, 457 (5th Cir. 1993).

   After calculating the "lodestar," the Court may enhance or decrease the amount of attorney's fees based on the relative weight of twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is

fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

Black, 732 F.3d at 501 citing Johnson v. Ga. Highway Exp., Inc.,488 F.2d 714, 717-19 (5th Cir. 1974).  However, a court may not adjust the lodestar due to a Johnson factor that was already taken into account during the initial calculation of the lodestar.  Black, 732 F.3d at 501; see also Perdue , 559 U.S. at 552 (holding that the "novelty and complexity of a case generally may not be used as a ground for an enhancement" because that factor is reflected in the number of hours billed).

## DISCUSSION

The Plaintiffs request a lodestar of $373,353.19.  ("Reply," Dkt. # 172 at 9.)  Mtech asks the Court to award a lodestar no greater than $228,444.00. ("Defs. Resp.," Dkt. # 171 at 2.)

I.    The Lodestar Calculation

The "lodestar" method consists of "multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work."  Black, 732 F.3d at 502.  The Court will address separately the issues of hours reasonably expended in litigation and the prevailing market rate for this type of work in the community.

A. <u>Hours Reasonably Expended in Litigation</u>

Plaintiffs state that five attorneys, numerous paralegals and law student clerks spent a total of 1,410.64 hours on this litigation.  (Dkt. # 170.)  According to billing records, the EJC worked 1,123.2 hours (Johnson Decl. ¶ 9) and the law firm of Lee & Braziel spent 287.44 hours.  (Braziel Decl. ¶ 16.)  In support of their calculations, Plaintiffs provide billing records from the law firms that worked on the case: the EJC (Dkt. # 170-2, Ex. A-1) and Lee & Braziel.  (Dkt. # 170-4, Ex. C-1.)  Plaintiffs also provide declarations from attorneys Aaron Johnson (Dkt. #170-1), Chris Willet ("Willet Decl.," Dkt. # 170-3) and Derek Braziel (Dkt. # 170-4.)  However, after exercising sound billing judgment to write off time for numerous and duplicative tasks, Plaintiffs are only claiming 1,269.5 hours towards their lodestar.  ("P. Mot.," Dkt. # 170 at 2; Johnson Decl. ¶¶ 10-11; Braizel Decl. ¶ 13.)  The Plaintiffs have submitted contemporaneously kept billing records with descriptive narratives and a write off of over $37,000 of duplicative or numerous tasks.  Plaintiffs support their sound billing judgment with declarations from various attorneys (Johnson Decl.; Willet Decl.; Braziel Decl.) and billing records.  (Dkt. # 170-2, Ex. A-1; Dkt. # 170-4, Ex. C-1.)  Accordingly, the Court finds that Plaintiffs' attorney exercised sound billing judgment.

Defendants object to the reasonableness of 60 hours spent mailing notices to putative class members, 90 hours spent pursuing claims against and

negotiating with CLP, approximately 80 hours spent pursuing unsuccessful

motions, and block-billing allegedly done by Plaintiffs' attorneys.  (Dkt. # 171 at

7.)

        1.  <u>Notice Mailing</u>

        The Defendants first object that the Plaintiffs' attorneys billed in

excess 60 hours for mailing notices to putative class members.  (Defs. Resp. at 6,

8.)  Yet, the Defendants do not provide a single pin cite in the record where the

Court might look to find excessive hours dedicated to notice mailing.

Nevertheless,  Plaintiffs agree to reduce 25% of Aaron Johnson's 138.1 hours in

question (34.5 hours) and 75% of the hours spent by support staff (12) hours.

(Reply at 6.)

        In addition to the hours Plaintiffs agree to cut, the Fifth Circuit

instructs that a district court "should consider whether the work performed was

'legal work in the strict sense' or was merely clerical work that happened to be

performed by a lawyer."  <u>Abrams v. Baylor Coll.Med.</u>, 805 F.2d 528, 536 (5th Cir.

1986).  In one instance, Aaron Johnson billed 6.7 hours on October 3, 2013 to

"research returned addresses" and to call a service provider.  (Dkt. # 171-3, Ex. C.)

The Court finds such work to be clerical in nature, especially compared to the 9.7

hours Aaron Johnson billed two weeks later for "legal research re other permissible

means of disseminating notice." (<u>Id.</u>)  Upon review of the EJC's billing records,

the Court finds that Aaron Johnson billed in excess of 87.7 hours that was clearly not legal, but instead clerical work.

Accordingly, the Court reduces Aaron Johnson's hours by 122.2 hours and the support staff by 12 hours: six from paralegals and six from law student clerks.

2.  Time Spent Pursuing Claims and Negotiating Settlement with CLP

The Defendants object to billing 58 hours the Plaintiffs spent preparing the case against and the settlement with CLP.  (Defs. Resp. at 10.)

The Fifth Circuit allows a district court to "impose joint and several liability in setting fees."  Walker v. U.S. Dept of Housing and Urban Dev., 99 F.3d 761, 772 (5th Cir. 1996).  However, if joint and several liability leads to inequitable results, it is reversible.  Walker, 99 F.3d at 772.

In Walker, the plaintiffs filed a lawsuit against the U.S. Department of Housing and Urban Development (HUD), the City of Dallas, and the Dallas Housing Authority.  Id. at 755.  Ultimately, the district court awarded attorney's fees in the amount of $910,228.13 and imposed joint and several liability among the three co-defendants for the fee's entirety.  Id. at 766.  The Fifth Circuit found that the imposition of joint and several liability as to the fee was appropriate because there was a "single indivisible injury" and each party played a substantial role in the litigation.  Id. at 773.

Accordingly, to determine whether or not the Defendants are liable for attorney's fees associated with the settlement agreement with co-defendants CLP and Labor Ready, the Court must determine if all four co-defendants played a substantial part in the litigation and caused a single indivisible injury to the Plaintiffs.

Here, the Court finds that MTech, Comfort Systems, CLP, and Labor Ready are jointly and severally liable for attorney's fees.  First, the four co-defendants are responsible for causing the violations of the FLSA that injured the Plaintiffs.  The settlement agreement  between CLP, Labor Ready, and the Plaintiffs stipulated that the "plaintiffs are current and former Mtech, Inc. employees, who were employed through CLP Resources, Inc. and Labor Ready Central, Inc., and performed work for MTech, Inc. at any time during the [relevant] three year period."  ("Stipulated J.," Dkt. # 150 ¶ 1.)  Additionally, as in <u>Walker</u>, all four co-defendants played a substantial part in the litigation.  For nearly two and half years of litigation, the four co-defendants litigated this case together.  While CLP and Labor Ready had different legal counsel from Mtech and Comfort Systems, it is without doubt that all four parties played a substantial role in the litigation and the Plaintiffs suffered a single indivisible injury due to the FLSA violations of all four defendants.

Accordingly, the Court finds that the Defendants are jointly and

severally liable for hours spent negotiating the settlement agreement with CLP.

However, if joint and several liability leads to inequitable results, it is reversible.

Walker, 99 F.3d at 772.  Here, the Court notes that CLP and Labor Ready agreed

to pay the Plaintiffs $40,060.00 in attorney's fees as part of their settlement

agreement. (Dkt. # 149-1 ¶ 1(p).)  Allowing Plaintiffs to essentially recover

attorney's fees twice for the same work would lead to an inequitable result because

Plaintiffs would be unjustly enriched.  Plaintiffs have already offset their request

by $24,600.00.  The difference between $40,060.00 and $24,600.00 is $15,460.00.

Therefore, the Court will reduce the lodestar by $15,460.00.

3.  <u>Time Spent Pursuing Unsuccessful Motions</u>

Defendants object to 77 hours spent by Plaintiffs on unsuccessful

motions for sanctions and protective orders.  (Def. Resp. at 10.)

Addressing prevailing party status and civil rights claims, the

Supreme Court made clear that "no fee may be awarded for services on [an]

unsuccessful claim."  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435 (1983).  However,

motions are distinctively different than claims.  Motions are a request for a court

order.  Fed. R. Civ. P. 7(b).  A claim is "a demand for money, property, or a legal

remedy to which one asserts a right; esp., the part of a complaint in a civil action

specifying what relief the plaintiff asks for."  *Claim*, <u>Black's Law Dictionary</u> (10th

ed. 2014).

Plaintiffs prevailing party status entitles them to attorney's fees for winning on their claim under the FLSA.  29 U.S.C. § 216(b).   The Court will not deny time spent on motions that were tied to advancing the course of litigation solely on the basis that the Plaintiffs did not prevail on them.  See Barrow v. Greenville Indep. Sch. Dist., No. 3:-00-CV-0913, 2005 WL 6789456, at *9 (N.D. Tex. Dec. 20, 2005) (holding that lack of prevailing-party status would deny an award only for unsuccessful claims, not unsuccessful motions); DP Solutions, Inc. v. Rollings, Inc., 353 F.3d 421, 434 (5th Cir. 2003) ("[A] party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim."); City of Riverside v. Rivera, 477 U.S. 561, 569 (1986) (emphasizing that "where a plaintiff has obtained excellent results . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit").   Additionally, after reviewing the billing records at issue, the Court finds nothing excessive about the time or vague in the narratives of each billable segment.  (Dkt. ## 171-6, 172-7.)

4.  Time Spent on Duplicative Tasks

Defendants allege the law office of Lee & Braziel engaged in $30,168.45 worth of duplicative tasks, (Defs. Resp. at 11) and point the Court to 71.5 hours of the billing records provided by Derek Braziel.  (Dkt. # 171-8, Ex. H.) However, the Defendants fail to provide a single pin cite to where in EJC's billing

records demonstrate a duplicative task with Mr. Braziel and his attorneys.

In calculating the lodestar, "[t]he court should exclude all time that is . . . duplicative." Watkins, 7 F.3d at 457.  After comparing a portion of the contested billable hours from Lee & Braziel (Dkt. # 171-8, Ex. H) against the billing records of the EJC (Dkt. # 170-2, Ex. A-1), the Court finds that no readily apparent duplication of billing exists.  For example, Defendants allege that 9.3 hours billed for travel to Austin for depositions by Jay Forester are duplicative. (Dkt. # 171-8, Ex. H.)  However, upon the Court's review of the EJC billing record, no attorney from the EJC participated in a deposition on or around the dates in question.  (Dkt. # 170-2, Ex. A-1 at 31.)  Second, Defendants assert that 11.4 hours of Meredith Matthews' time is duplicative when she conducted the task "draft and revise reply on MFN[1]" on November 26-27, 2012.  (Dkt. # 171-8, Ex. H.)  Yet, upon review of the EJC billing records around the same time frame, the Court can only find evidence that EJC attorney's worked on motions for protective orders and drafted new complaints.  (Dkt. # 170-2, Ex. A-1 at 11.)  Nothing in EJC's descriptive billing records refers to drafting a reply for a "MFN."

Accordingly, the Court does not find that any of the hours from Lee & Braziel are duplicative.

---

[1] The Court assumes that "MFN" means a Motion for Notice.

B. <u>Reasonable Hourly Rate</u>

After determining the number of hours reasonably expended on the litigation, the Court must determine "an appropriate hourly rate, which is the market rate in the community for this work." <u>Black</u>, 732 F.3d at 502.  The court is to determine the prevailing market rates based upon the rates in the community in which the district sits.  <u>Meesook v. Grey Canyon Family Medicine, P.A.</u>, No. 5:13-CV-729-XR, 2014 WL 5040133, at * 3 (W.D. Tex. Oct. 8, 2014) )citing <u>Tollet v. City of Kemah</u>, 285 F.3d 357, 68 (5th Cir. 2002)).  The Fifth Circuit suggests that "[g]enerally, the reasonable rate for a particular community is established through affidavits of other attorneys practicing there." <u>Tollet</u>, 285 F.3d at 368.

The Plaintiffs' attorneys submit four affidavits and one affidavit of an outside attorney from the community.  Derek Braziel's affidavit states his current hourly rate is $495, that he has 20 years of experience in labor law, is Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization, and has been lead counsel in over 150 overtime cases like the one at issue here.  (Braziel Decl. ¶¶ 2,4,6.)  Braziel's affidavit also states that his paralegal Josey Gonzales has over 15 years of experience and works at $195 per hour, his associate Meredith Matthews has over nine years of experience and bills $335 per hour, and his associate Jay Forester has two years of experience and bills at $295 per hour.  (<u>Id.</u> ¶ 14.)  Attorney Christopher Willet submitted an affidavit

stating that he has over six years of experience and that he is "aware of the customary rates for attorneys specializing in the area of labor and employment within Austin, Texas," and based on his knowledge and experience "the reasonable hourly rates for Plaintiffs' counsel are $325 for Aaron Johnson, $310 for Chrisopher Willet, $145 Cecilia Marroquin [paralegal], and $120 for law students." (Willet Decl. ¶¶ 3,6.)  Attorney Jesse (Jay) Forester stated in his affidavit that he has over two years of experience as a lawyer and bills at $295 per hour.  ("Forester Decl.," Dkt. # 170-7.)  Plaintiffs also submit an affidavit from attorney Ron Chapman who has practiced in the Eastern District of Texas for 20 years, is Board Certified in Labor and Employment Law by the Texas Board of Legal Specialization, bills at $353 per hour, and has a seventh year associate who bills at $240 per hour.  Accordingly, the Plaintiffs request the following rates:

| Plaintiffs Suggested Rates | | |
|---|---|---|
| **Attorney** | **Rate** | **Experience** |
| Aaron Johnson | $325 | 7+ years of experience |
| Chris Willet | $310 | 6+ years of experience |
| J. Derek Braziel | $495 | 20+years and FLSA expert |
| Jay Forester | $295 | 2+ years of experience |
| Meredith Matthews | $335 | 9+ years of experience |
| Paralegals | $95-$195 | |
| Law Student Clerks | $120 | 0 years |

(Pls. Mot. at 2-3.)

The Defendants suggest that Plaintiffs have not carried their burden of demonstrating the reasonableness of their requested rates.  Instead, Defendants

14

propose the following as requested rates:

| Defendants Suggested Rates | | |
|---|---|---|
| **Attorney** | **Rate** | **Experience** |
| Aaron Johnson | $275 | 7+ years of experience |
| Chris Willet | $235 | 6+ years of experience |
| J. Derek Braziel | $330 | 20+years and FLSA expert |
| Jay Forester | $200 | 2+ years of experience |
| Meredith Matthews | $295 | 9+ years of experience |
| Paralegals | $95 | |
| Law Student Clerks | $85 | 0 years |

(Defs. Resp. at 5-6.)

        In recent years, courts in the Western District of Texas have found reasonable attorney rates to range from $205 to $400 for an attorney and $120 for an experienced paralegal.  See  Meesook, 2014 WL 5040133, at * 3 (awarding $400/hour and $250/hour as reasonable and customary rates in an FLSA case that took 16 months to complete); Alex v. KHG of San Antonio, No. 5:13-CV-0728, 2015 WL 5098327, at *2-3 (W.D. Tex Aug. 28, 2015) (holding $325/hour a reasonable and customary rate for an FLSA attorney with over 20 years of experience and $250/hour for an attorney with eight years of experience.)  The Court also takes judicial notice of the State Bar of Texas Department of Research and Analysis' 2013 Hourly Rate Fact Sheet ("Rate Report").  Judges in the San Antonio Division regularly take judicial notice of the Rate Report.  See, e.g., KHG

of San Antonio, 2015 WL 5098327, at * 3; Alvarez v. AMB-Trans Inc., No.5:11-CV-179, 2013 WL 789238, at * 2 (W.D. Tex. Mar. 4, 2013) (noting that the hourly rates submitted by counsel appeared to be higher than the customary fee in the Rate Report for the San Antonio Area).  The Rate Report indicates that in 2013 the median hourly rate for an attorney practicing Labor-Employment law in the Austin area was $263.  Courts have also found that $160/hour was permissible for a paralegal with 23 years of litigation experience, $144/hour permissible for a paralegal with 12 years of experience, and $60/hour permissible for a legal assistant.  Structural Metals, Inc. v. S & C Elec. Co., No. 09-CV-984, 2013 WL 3790307, at * 10 (W.D. Tex. Jul. 19, 2013).

Accordingly, the Court finds the following rates to be reasonable and customary for this type of litigation:

| Court Approved Rates | | |
|---|---|---|
| **Attorney** | **Rate** | **Experience** |
| Aaron Johnson | $290 | 7+ years of experience |
| Chris Willet | $275 | 6+ years of experience |
| J. Derek Braziel | $350 | 20+years and FLSA expert |
| Jay Forester | $225 | 2+ years of experience |
| Meredith Matthews | $300 | 9+ years of experience |
| Paralegals | $150 | |
| Law Student Clerks | $85 | 0 years |

Therefore, Court computes the lodestar based on the following data:

| Attorney | Rate | Hours | Billed Total |
|---|---|---|---|
| Aaron Johnson | $290 | 686.1 | $198,969.00 |
| Chris Willet | $275 | 47.2 | $12,980.00 |
| J. Derek Braziel | $350 | 165.4 | $57,890.00 |
| Jay Forester | $225 | 36.7 | $8,257.50 |
| Meredith Matthews | $300 | 24.5 | $7,350.00 |
| Paralegals | $150 | 109.7 | $16,455.00 |
| Law Student Clerks | $85 | 75.4 | $6,409.00 |
| | **TOTAL =** | **1135.3** | **$308,310.50** |

Thus, the Court finds an initial lodestar of $308,310.50, but reduces it for the $15,460.00 in attorney's fees from the CLP/Labor Ready settlement because those hours were included in EJCs billing records.  (See Dkt. # 170-2.) Therefore, the Court finds a lodestar of $292,850.50.

II.    Lodestar Adjustments

After calculating the "lodestar," the Court may enhance or decrease the amount of attorney's fees based on the relative weight of twelve factors set forth in Black, 732 F.3d at 502 citing Johnson , 488 F.2d at 717-19.  The Defendants do not raise any specific objections to the lodestar under the Johnson factors. Nevertheless, the Court will address them.

1.    Time and Labor Required

The Plaintiffs filed this matter on August 6, 2012 and litigation ensued for nearly three years.  The Court makes no judgment as to which party caused this

litigation to stretch on for such an extensive length of time, but does note that class

action litigation involves extensive time, labor, and effort and that both parties

zealously advocated for their clients.  However, the Court considered the hours

spent on this litigation by the prevailing party in its determination of the lodestar.

Therefore, the Court will not consider this factor on making an adjustment.  Black,

732 F.3d at 501 (holding that a court may not adjust the lodestar due to a Johnson

factor that was already taken into account during the initial calculation of the

lodestar).

    2.  The Novelty and Difficulty of the Questions

        The Plaintiffs' allege that this case was particularly difficult and novel

due to parallel and necessary litigation in a state administrative process.  (Pls. Mot.

at 4, 6.)  The Plaintiffs also allege that the novelty and complexity of this litigation

resulted in a Texas state court deciding for the first time that the Texas Prevailing

Wage Act could be used to determine the regular rate of pay for computing

overtime damages.  (Id. at 6.)  The Court appreciates the complexity of parallel

litigation and the success of novel legal arguments, however, the Court

incorporated the billed time for this parallel litigation in its lodestar calculation.

Therefore, the Court will not adjust the lodestar based on this factor.

    3.  The Skill Requisite to Perform the Legal Service Properly

        The Johnson Court instructs that a court should "closely observe the

attorney's work product, his preparation, and general ability before the court."

Johnson, 488 F.2d at 718.  The Plaintiffs' attorneys have performed strongly before

this Court, but the Court does not find that this factor should enhance the fee

because the Court considered the skills of each attorney in its analysis of

reasonable hourly rates based on the skill of each attorney.

> 4. <u>The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case</u>

The Plaintiffs' attorneys allege this matter precluded them from

accepting other cases from potential clients with meritorious claims. (Pls. Mot. at

7; Johnson Decl. ¶ 17; Braziel Decl. ¶ 19.)  The Fifth Circuit has explained that

"preclusion of other employment" is generally subsumed within the lodestar

amount.  <u>Heidtman v. Cty. of El Paso</u>, 171 F.3d 1038, 1043 (5th Cir. 1999).

Plaintiffs do not point to specific instances of precluded employment opportunities,

so the Court finds this factor to weigh against an enhancement of the lodestar.

> 5. <u>The Customary Fee</u>

The Court considered the customary fee in FLSA cases when it

determined the reasonable hourly rate in the lodestar analysis.  It would therefore

be inappropriate to consider this factor a second time for an adjustment.

> 6. <u>Whether the Fee is Fixed or Contingent</u>

The Supreme Court and the Fifth Circuit have barred the use of this

factor to enhance an attorney's fee.  <u>City of Burlington v. Dague</u>, 505 U.S. 557,

566-67 (1992) (holding that enhancement for contingency is not permitted under the fee-shifting statutes at issue); Shipes v. Trinity Indus., 987 F.2d 311, 322-23 (5th Cir. 1999) ("[W]e now hold that the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees awarded to prevailing plaintiffs under traditional fee-shifting provisions."). Accordingly, this Court will not consider it.

### 7. Time Limitations Imposed by the Client or the Circumstances

The Plaintiffs' attorneys point to no limitations imposed by their clients during the course of this litigation and the Court can find none. Therefore, this factor weighs against an enhancement of the lodestar.

### 8. The Amount Involved and the Results Obtained

The Fifth Circuit has held that "the most critical factor in determining an attorney's fee award is the degree of the success obtained." Black, 732 F.3d at 503 (internal citation omitted). However, "it would be an abuse of discretion for the district court to reduce [an] attorney's fee aware solely on the basis of the amount of damages obtained." Id.

Here, the Plaintiffs received $99,900.00 from the settlement agreement with Labor Ready and CLP. (Dkt. # 149-1 ¶ 1.) The Plaintiffs also received $200,000 from Mtech and Comfort Systems in the Defendants' Offer of Judgment. (Dkt. # 163-1, Ex. 1 ¶ 2.) It is undisputed that the Plaintiffs prevailed

and the results obtained were favorable to the Plaintiffs.  Currently, the lodestar and the amount of damages paid are roughly equivalent.  The Court finds that this lodestar is appropriate given the results obtained and its proportion to the damages paid.  See Saizan. 448 F.3d at 802 (holding that there is no *per se* proportionality rule); Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1048 (5th Cir. 1998) (holding a district court abused its discretion by awarding an attorney's fee over six and one half times the amount of damages awarded).

    9.  The Experience, Reputation, and Ability of the Attorneys

        The Court considered the experience, reputation and the ability of all attorneys involved when it considered the reasonable hourly rate for each attorney. Therefore, it would be inappropriate for the Court to consider this factor in determining whether or not to enhance the lodestar.

    10. The Undesirability of the Case

        Plaintiffs' attorneys allege that this matter was difficult because many class members did not speak English, were difficult to locate, afraid to join due to their immigration status, and unable to pay fees and litigation costs.  (Pls. Mot. at 6.)  These types of difficulties do not rise to the type of undesirability the Fifth Circuit requires.  The case law suggests that this factor relates to negative public reactions to a certain type of legal representation, such as civil rights litigators in a community that does not want to see discrimination eradicated.  See Johnson, 488

21

F.2d at 719 (explaining that the "undesirability" factor refers to hardships an attorney may face in his or her community for pursuing a case that "is not pleasantly received by the community or his contemporaries"); Cooper v. Pentecost, 77 F.3d 829, 833-34 (5th Cir. 1996) (affirming a district court's decision not to enhance based on the "undesirability" factor because "despite any general negative stigma associated with prisoner cases, the attorneys did not demonstrate that they were subjected to 'oppressive, unpleasant, or intimating conditions' that would support an enhancement).

11. The Nature and Length of the Professional Relationship with the Client

The Court may consider this factor to enhance the lodestar to make the fee reasonable because "a lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office." Johnson, 488 F.2d at 719.  The Plaintiffs do not assert any special nature or length of their professional relationship with the class action clients and the Court can find none.

12. Awards in Similar Cases

Attorney's fee awards in FLSA class action cases within the Western District of Texas are consistently six-figure dollar amounts.  See KHG of San Antonio, 2015 WL 5098327, at * 8 (awarding $162,196.77 in attorney's fees in an FLSA action that went to trial); Singer v. City of Waco, Tex., No. 99-CA-296,

2001 WL 34773880, at * 5 (W.D. Tex. Nov. 13, 2001) (awarding $250,750.00 in attorney's fees in an FLSA class action lawsuit); Clark v. Centene Corp., No. 12-CA-174, 2015 WL 6962894, at * 12 (W.D. Tex. Nov 10, 2015) (awarding $659,254.87 in attorney's fees in an FLSA class action lawsuit); Meesook, 2014 WL 5040133, at * 6 (awarding $40,991.50 in attorney's fees in an FLSA that was not a class action).

Accordingly, the Court finds that the current lodestar of $292,850.50 falls within the range of similar awards for FLSA class action lawsuits in the Western District. Therefore, this factor does not weigh towards enhancing or decreasing the award.

III.   Costs

Plaintiffs submitted a Bill of Costs in the amount of $9,167.60. (Dkt. # 169.) This Court may tax as costs the following: (1) fees of the clerk or marshal; (2) fees for printed or electronically recorded transcripts obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1920; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretations services under 28 U.S.C. § 1828. 28 U.S.C. § 1920. The Court finds that all costs are eligible under

28 U.S.C. § 1920.  Accordingly, the Court awards Plaintiffs costs in the sum of $9,167.60.

CONCLUSION

In sum, the Court's calculated lodestar is $292,850.50.  None of the Johnson factors justify an enhancement or reduction in the lodestar.  Therefore, the Court awards Plaintiffs a total of $292,850.50 in attorney's fees.  The Court awards Plaintiffs $9,167.60 in costs.

**IT IS ORDERED**

**DATED:** December 8, 2015.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE